# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                            Criminal No. 12-1246 WJ

JIANYU HUANG,

      Defendant.

### MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART
### SANDIA CORPORATION'S MOTION TO QUASH RULE 17(c) SUBPOENA
### and
### DENYING WITHOUT PREJUDICE
### DEFENDANT'S MOTION TO COMPEL SPECIFIC DISCOVERY and
### THIRD MOTION REQUESTING SPECIFIC DISCOVERY

THIS MATTER comes before the Court following a hearing on the following motions:[1]

- Motion by Sandia Corporation to Quash Rule 17(c) Subpoena, & for Additional Time to Produce Documents & for Entry of Protective Order, filed December 24, 2013 (**Doc. 119**);
- Defendant's Motion to Compel Specific Discovery, filed November 20, 2013 (**Doc. 99);** and
- Defendant's Third Motion Requesting Specific Discovery, filed November 22, 2013 (**Doc. 101**).

The Court has considered the law relevant to Rule 17(c) of the Federal Rules of Criminal Procedure, as well as counsel's arguments presented in the briefs and at the hearing. The Court grants the motion in part and denies it in part. The Court also address two other pending motions, Docs. 99 and 101, which may be resolved either partially or fully, with the discovery produced to Defendant as a result of the Court's rulings on the motion to quash.

### BACKGROUND

_____
[1] The second and third motions were not addressed at the hearing.

Non-party Sandia Corporation d/b/a Sandia National Laboratories ("Sandia") moves the Court to quash a Rule 17(c) subpoena served by Defendant, for entry of a protective order to ensure that Sandia's interests are protected, and for additional time to produce documents.

Rule 17(c)(2) of the Federal Rules of Criminal Procedure provides that a court may quash or modify a subpoena "if compliance would be unreasonable or oppressive." To require production prior to trial, the moving party must demonstrate:

(1) that the documents are evidentiary and relevant;

(2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) that the application is made in good faith and is not intended as a general "fishing expedition." *Gonzalez-Acosta*, 989 F.2d at 389 (citing *U.S. v. Nixon,* 418 U.S. 683 (1974)).

## DISCUSSION

The Rule 17(c) subpoena served in this case by Defendant included 37 categories of document requests. *See* Doc. 168, Court's Ex. 1 (copy of Rule 17 Subpoena and Document Requests). Sandia argues that Defendant attempts to improperly use Rule 17 as a discovery device beyond what is allowed by Fed.R.Crim.P. 16 in that most of the requests are overly broad and non-specific;[2] that they go beyond the scope of the criminal case;[3] that some requests contain inadmissible hearsay;[4] and that some of the documents requested are otherwise procurable from other agencies.[5] Sandia also claims that the subpoena is unreasonable and oppressive.[6] *See U.S. v. Gonzales-Acosta,* 989 F.2d 384, 389 (10th Cir. 1993) (Rule 17 does not make available any

---

[2]  Doc. Requests 1-6, 8-10, 15, 17-20, 24-33 & 35-37.
[3]  Doc  Requests 3, 4, 5, 8 & 10.
[4]  Doc. Requests 1-6, 8 & 18-20.
[5]  Doc. Requests 25, 32, 33, 36 & 37.
[6]  Doc. Requests 1, 2, 3, 4, 6, 11, 21, 24 & 31.

additional means of discovery beyond those already provided for by Fed.R.Crim.P. 16). Defendant has no constitutional right to discovery and is not entitled to discovery beyond Rule 16, and the Court has kept this in mind in addressing Sandia's motion to quash.

The 37 categories of document requests can be separated into three general groups: (1) requests for material that would be disclosed upon Defendant's entering in a protective order which would allow Sandia to release certain documents that contain proprietary or sensitive information; (2) requests for material which are more appropriately obtained from other agencies; (3) and requests which do not meet the criteria under Rule 17(c) and *Nixon*.

## I.      Items to Be Produced Subject to Protective Order

The issue of Sandia's need to have a protective order in place before certain documents can be released is not new, and defense counsel's refusal to sign the order dates from mid-December 2013.   *See* Docs. 115 & 116 (Clerk's Minutes).   Having reviewed the proposed protective order, *see* Doc. 159-1, and, having found nothing unduly restrictive or unfair in requiring defense counsel to sign this before being able to obtain material that has been determined to be either sensitive or proprietary to Sandia, the Court signed the protective order at the hearing.   The Protective Order has been entered in this case, *see* Doc. 163, and Sandia has been instructed that it has no obligation to release information which would come under its protection unless and until defense counsel signs the Protective Order.   Sandia has identified this material as Requests Nos. 9, 11-15, 21, 23, 29 and 34.[7]   The Court thus GRANTS the motion to

---

[7]   This protective order is specific to Sandia's interests, and has no relation to the Protective Order (Doc. 53) entered in this case to prevent the unauthorized disclosure or dissemination of classified information pursuant to Section 3 of the Classified Information Procedures Act, 18 U.S.C. App. 3 (2006) ("CIPA").   Because the process set up in the CIPA Protective Order is available to all parties, and defense counsel have obtained the required security clearances, Sandia has no reason to refuse to turn over material, or delay disclosure for any material, which may be potentially classified.   This has no impact, of course, on material for which Sandia conducts reviews in order to protect its own interests.

quash as to these items unless and until the Protective Order is signed, in which case the motion is denied and Sandia is required to disclose this information to defense counsel.

## II.     Materials that are Otherwise Procurable from Other Agencies

Sandia claims that they do not have sufficient custody, possession or control over some material—Requests Nos. 25, 32, 33, 36 and 36—and that the motion should be quashed with respect to these documents.  Sandia also contends that Defendant has not met the second *Nixon* element for these requests because this material is owned by other agencies such as the Department of Homeland Security ("DHS") or the Federal Bureau of Investigation ("FBI").

Defense counsel argued at the hearing that the law requires the Government to ferret out material which may be owned by, or in the custody or other governmental entities, under *Kyles v. Whitley,* 514 U.S. 419, 437 (1995).   The Court does not find *Kyles* to support so broad a duty on the part of the Government.  Under *Kyles,* the Government has a duty to "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," in situations where other agencies have participated with the Government to a degree which would justify such a duty, including joint investigations, shared resources, and when other agencies have taken an active role in the prosecution.   Also, as counsel for the Government pointed out, the Government's duty under *Kyles* is limited to exculpatory material under *Brady v. Maryland,* 373 U.S. 83 (1963), and to its obligations under Rule 16(a)(1)(E)(i) (duty to disclose items that are "within the government's possession, custody or control"); *see also U.S. v. Pearl,* 324 F.3d 1210, 1215 (10th Cir. 2003) (disclosure of exculpatory material under *Brady* governs material that is still in the government's possession).   The Court finds that *Kyle* does not apply in this case because of the nature of the requested material (Defendant prematurely and rather

speculatively characterizes the requested material as "exculpatory") and because there does not exist the closely aligned relationship between the FBI, DHS and the prosecution.

At the same time, the Court is not quite convinced that Sandia is entirely correct, either, particularly with regard to DOE-owned material.  Sandia's position is that defense counsel must subpoena DOE, the FBI and DHS for documents which are owned by those agencies, and Sandia relies on case law to argue that the availability of this material from other agencies pertains to *Nixon's* second "otherwise procurable" element.  However, the Court does not read these cases the same way:  *Nixon's* second element requires that materials "are not otherwise procurable reasonably in advance of trial by exercise of due diligence." *Nixon,* 418 U.S. at 683.   Other cases cited by Sandia suggest that the question to be asked under that element is whether documents can be procured *without* a subpoena or by other reasonable means. *See, e.g., U.S. v. Vasquez,* 258 F.R.D. 68 (E.D.N.Y. 2009) (motion to quash denied where documents were not "otherwise procurable without a subpoena because they are in the sole possession of the Nassau County Police Department"); *U.S. v. Hunter,* 13 F.Supp.2d 586 (D. Vt. 1998) (defendant's motion to quash subpoena which government had issued to university was denied where defendant's undergraduate records were not otherwise procurable by the government and could only be provided by Yale University's Registrar's Office").   None of these cases addresses the situation where the requested documents may be available in two governmental agencies, or where an exercise of due diligence could obviate the need for a Rule 17(c) subpoena.  In this case, there is no reasonable alternative to the issuance of a subpoena to *some* governmental agency in order for defense counsel to obtain the requested material, and the Court does not read *Nixon's* "otherwise procurable" language to require defense counsel to turn to another agency—

the DOE, the FBI or DHS—with a Rule 17(c) subpoena for documents which are within Sandia's custody, possession and control.

The Court finds that Sandia and DOE have a close working relationship which brings DOE-owned material within the purview of the subpoena.   According to Sandia, DOE is reluctant to have its contractors produce these documents because DOE requires a protective order to be in place, and because it wishes to have the "final say" over disclosure.   Sandia's Protective Order is now entered in this case, and should DOE take issue with Sandia's disclosure of any requests pursuant to this Court Order, DOE can decide whether to intervene in order to be heard.   In the following section, the Court will consider whether requests for DOE-owned documents pass the relevance and specificity elements of Nixon, but to the extent these document requests meet those requirements, Sandia's motion to quash concerning the "otherwise procurable" element will be DENIED as to DOE-owned documents and material.

The motion to quash will be GRANTED, however, with regard to any non-DOE owned documents, which are in the custody and control of other governmental agencies, including the FBI and DHS.   Defense counsel will have to resort to Rule 17(c) in order to obtain Requests Nos. 25, 32, 33, 36 and 36 from those agencies.

## III.   Relevance and Specificity of Requested Material

The last grouping is the largest, and includes those requests which Sandia contends are either overly broad and non-specific, are burdensome and oppressive and which contain hearsay. To start with, Sandia claims that many of the requested documents (Doc. Requests 1-6, 8, & 18-20) are inadmissible because they contain hearsay.   *U.S. v. Cherry*, 876 F.Supp. 547 (S.D.N.Y. 1995) (materials obtained through Rule 17 must themselves be admissible as evidence).   The

Court DENIES the motion to quash for those documents where the Defendant is a party and will testify, or where the individuals involved in these documents will be witnesses at trial.

The Court has considered each remaining requests for which there are other objections, and makes the following findings.[8]

*Request No. 1*:  The Court GRANTS the motion to quash.   According to defense counsel's representations, this category duplicates e-mails which defense counsel has already obtained from Defendant's computer and which are being submitted to the Government on a USB drive for CIPA classification review.

*Requests Nos. 2, 3, 4, 8, 19 & 20:*  The Court DENIES the motion to quash.   Defendant has sufficiently described the relevance of these documents, and has limited the requests in scope to the period from January 2011 until Defendant's termination, April 27, 2012.

*Request No. 5:*  The Court GRANTS the motion to quash as being overly broad, and Defendant has not satisfied his burden of showing sufficient specificity under *Nixon*.

*Request No. 6:*  The Court GRANTS the motion to quash.  While Defendant has limited the time period, the scope of the request is overly broad.

*Request No. 7*:  The Court DENES the motion to quash conditionally:  it is not clear whether Sandia has this report in its possession, custody or control.  If so, then Sandia is required to produce it.

*Request No. 10:*  The Court DENIES the motion to quash conditionally.  Defendant has met the *Nixon* specificity and relevance requirements in that the CRC (Corporate Review Committee) documents were generated in April of 2012 as part of Sandia's termination process.  Given that April of 2012 is outside of the time period referenced in the superseding indictment, these documents are not relevant unless the Government intends to present evidence of Defendant's termination by Sandia as part of the Government's case-in-chief.  Without the Court knowing whether Defendants' termination from Sandia is going to be presented to the jury, the Court will at this time order production of the CRC documents relating to Defendant's termination that were generated in April 2012.  However, even though the CRC documents are ordered to be produced, they may well be the proper focus of a future motion in limine, since admissibility at trial is questionable and depends on whether the Government will be presenting the fact of Defendant's termination at trial.

*Requests Nos. 17 and 18:*  The Court DENIES in part and GRANTS in part the motion to quash. Defendant has satisfied the relevance of these requests under Count 7 of the Superseding Indictment, but has not specifically limited the time period.   Sandia is ordered to produce

---

[8]   Where a Document Request is not mentioned either in the above discussion or in this discussion, Sandia has offered no objection.   In addition, the Court notes that the number "16" was not included in the list of Document Requests in the Rule 17 subpoena, probably as a result of an oversight.

responsive material beginning from June 1, 2011 until September 30, 2011. This period of time includes the date Defendant allegedly told Ms. Jahner he was not planning to take the laptop on his trip to China, and goes two months beyond Defendant's return from China.

*Requests Nos. 21 and 22:*   The Court DENIES the motion to quash.  Request No. 21 was also included in the group of requests to be disclosed subject to Sandia's Protective Order, and thus the Court's ruling herein assumes defense counsel will sign the Protective Order.   Number 21 is Defendant's personnel file.  Sandia has represented that it has already been produced to the Government, but defense counsel stated that he has not received it.   The Court finds that direct production to defense counsel may be less confusing, and orders Sandia to turn over the file to defense counsel, with a copy to the Government.  Request Number 22 requests Defendant's Performance Review Files, which are part of the personnel file, and thus part of Request Number 21.

*Request No. 24*:  Defendant withdrew this request at the hearing.

*Request No. 26:*  The Court GRANTS the motion to quash.  The Court agrees with Sandia's characterization of this request in that it endeavors to prove a negative.  The fact that no note may have been unearthed which states that it was improper for Defendant to have samples sent to his home, does not prove that Defendant was entitled to do so.

*Request No. 27:*  Defendant withdrew this request at the hearing.

*Requests Nos. 28 & 29:*  The Court DENIES the motion to quash, subject to Sandia's Protective Order being signed by defense counsel.

*Request No. 30:*  The Court GRANTS the motion to quash.  Defendant seeks "cross agency" documents of DOJ, DOE, DHS, NSA, CIA and FBI.   This request is overly broad and non-specific.   Further, as discussed previously, Rule 17(c) subpoena does not create a one-stop option for defense counsel to gather all governmental agency documents that "pertain" to Defendant.

*Request No. 31:*  The Court GRANTS the motion to quash.   Based on counsel's representations at the hearing, it seems that the FBI took ownership of the laboratory and offices and that the requested items may now be in the possession of the FBI.   Also, Sandia explained that the Center for Integrated Nanotechnologies ("CINT") where Defendant worked, was a user facility and thus Sandia does not keep as a matter of course the inventories that are requested.   To the extent that such inventories exist, defense counsel must obtain them from the FBI.

*Request No. 35:*  The Court GRANTS the motion to quash.   Defendant seeks a huge and burdensome amount of information to establish the single point of showing that there were no New Mexico hazard findings against the laboratory while Defendant was in charge.  Counsel for Sandia has suggested that a stipulation of the parties can accomplish the same objective, and parties are free to consider that alternative.

## IV.     Defendant's Discovery Motions (Docs. 99 & 101)

In these motions, Defendant seeks the DOE reviews/audits concerning use of the Transmission Electron Microscope ("TEM"), CINT "User Agreements" and other DOE documents and reports which are in the possession of either DOE or Sandia. The Government's position is that it has no obligation to produce material that is in the possession, custody and control of Sandia. From its review of these two motions, the Court assumes that they may partially or completely be resolved with the Court's ruling on Sandia's Motion to Quash, and thus DENIES these two motions without prejudice. Any remaining requested information which is not resolved by the Court's rulings on the motion to quash may be taken up by Defendant and presented to the Court at a later time.

## CONCLUSION

In sum, the Court grants the motion to quash with regard to some of the categories of Requested Documents from the Rule 17(c) subpoena, including those materials that would be subject to Sandia's Protective Order (Doc. 163), and materials which are in the custody and control of other governmental agencies, with the exception of DOE. Finally, the Court made findings as to whether Defendant gave sufficient relevance and specificity for other categories under the *Nixon* factors.

For those documents which the Court has ordered Sandia to produce to Defendant, Sandia shall do so within THIRTY (30) days of the entry of this Order.

**THEREFORE,**

**IT IS ORDERED** that the Motion to Quash Rule 17(c) Subpoena filed by Sandia corporation **(Doc. 119)** is hereby GRANTED IN PART and DENIED IN PART, as described above in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED**  that Defendant's Motion to Compel Specific Discovery **(Doc. 99)** is DENIED without prejudice; and

**IT IS FINALLY ORDERED** that Defendant's Third Motion Requesting Specific Discovery **(Doc. 101)** is DENIED without prejudice.

_____

UNITED STATES DISTRICT JUDGE