**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

UNITED STATES OF AMERICA,

Plaintiff,

vs. CRIMINAL NO. 12-1246 WJ

JIANYU HUANG,

Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART DEFENDANT'S MOTION TO DISMISS COUNTS 1-7 OF THE SUPERSEDING INDICTMENT FOR GOVERNMENT'S FAILURE TO COMPLY WITH *GARRITY V. NEW JERSEY and KALKINES V. U.S.* (Doc. 144)**
**and**
**SETTING OF TELEPHONIC CONFERENCE PRIOR TO EVIDENTIARY HEARING**

THIS MATTER comes before the Court following a hearing upon Defendant's Motion to Dismiss Counts 1-7 of the Superseding Indictment for Government's Failure to Comply with *Garrity v. New Jersey* and *Kalkines v. United States*, filed January 31, 2014 **(Doc. 144)**. In this motion, Defendant seeks to dismiss all counts in the Indictment and Superseding Indictment (Counts 1-7) on the grounds that the Superseding Indictment was tainted by statements compelled during an internal investigation, in violation of Defendant's Fifth Amendment rights. Having reviewed the parties' briefs and applicable law, and considered counsel's oral argument, the Court finds that Defendant's motion is well-taken in part and is granted as follows: an evidentiary hearing will be held to determine whether Sandia should be considered an agency of the Government, and if so, whether Defendant's statements were compelled, running counter to Defendant's Fifth Amendment rights under *Garrity v. New Jersey*, 385 U.S. 493 (1967) and

*Kalkines v. U.S.*, 473 F.2d 1391 (Ct. Cl. 1973).[1] The Court stated its reasons for this decision on the record at the hearing, which this Memorandum Opinion and Order commemorates.

## BACKGROUND

The seven-count Superseding Indictment (Doc. 132, Redacted) charges Dr. Huang with five counts of Federal Program Fraud, 18 U.S.C. § 666(a)(1)(A) (Counts 1-5), alleging that Dr. Huang was an agent of Sandia National Laboratories (SNL), that SNL in excess of $10,000 annually from the Department of Energy, and that Dr. Huang "embezzled, stole, obtained by fraud, intentionally misapplied and without authority knowingly converted to the use of persons not the rightful owner . . . [SNL] property worth at least $5,000." Count 6 alleges a violation of 18 U.S.C. § 1001(a)(2) (Making a False Statement, referring to Defendant's statement that he did not intend to take his SNL laptop to China later that month); and Count 7 alleges a theft of SNL property referring to the SNL laptop computer that Dr. Huang took to China and brought back with him on his return trip.

Defendant contends that the Court needs to conduct an evidentiary hearing in order to make a complete record on whether the Government must show that the Superseding Indictment was not tainted by statements compelled during an internal investigation, running counter to *Garrity v. New Jersey*, 385 U.S. 493 (1967) and *Kalkines v. U.S.*, 473 F.2d 1391 (Ct.Cl. 1973).[2] The Government contends that there is no need for a hearing and that Defendant's motion should be denied.

## DISCUSSION

[1] The motion is granted only in part, because at this point, Defendant is not entitled to dismissal of any of the Counts in the Superseding Indictment. Defendant has, however, made a showing that a hearing is appropriate to determine whether Defendant's statements were compelled in violation of his constitutional rights.

[2] Defendant refers to the hearing as a *Kastigar* hearing in which the prosecution must prove that its case rests solely on evidence other than the protected statements and their fruits. *See Kastigar v. U.S.*, 406 U.S. 441, 460 (1971). *Garrity* does not specifically refer to a *Kastigar* hearing in describing a hearing to determine the voluntariness of statements, but *Slough* does. The *Kastigar* case specifically addressed a grant of statutory immunity, which is not the issue here, but the objective of the hearing would be the same.

*In Garrity*, the Supreme Court held that the Fifth Amendment privilege against self-incrimination bars the government from using statements compelled under a threat of job loss in a subsequent criminal prosecution. *Id*. at 500. In *Kalkines*, 473 F.2d 1391 (Ct. Cl. 1973), the *Garrity* doctrine was extended to apply to federal employees who are compelled to answer questions under threat of job termination. A *Garrity* or *Kalkines* "warning" to an employee informs the employee that he must make a statement or face termination but that any statement so made cannot be used in a subsequent criminal prosecution. *U.S. v. Slough*, 677 F.Supp.2d 112 (D.D.C. 2009), *vacated on other grds*., 641 F.3d 544 (C.A.D.C. 2011). This means that an individual cannot be discharged simply because he invokes his Fifth Amendment privilege against self-incrimination in refusing to respond; or, conversely, statements coerced by the employee by threat of removal from office in an earlier disciplinary investigation cannot be used in a subsequent prosecution. *Kalkines*, 473 F.2d at 1393.

The first part of the inquiry is whether Fifth Amendment protections are implicated, and thus the first question here is whether Defendant's employer, non-party Sandia corporation d/b/a Sandia National Laboratories ("Sandia") should be treated as an agent of the federal government for purposes of this motion. If the answer is yes, then the next part of the inquiry is whether Defendant has established that his statements were "compelled" for *Garrity* purposes, for which Defendant must show (1) that he subjectively believed that his statements were compelled by the threat of job loss, and (2) that this belief was objectively reasonable. *U.S. v. Vangates*, 287 F.3d 1315 (11th Cir. 2002).

Defendant has not specifically identified the statements he claims were compelled under *Garrity*, but in making reference to Counts 6 & 7 in the Superseding Indictment, the Court assumes that the statements that are at issue are Defendant's statements to Sandia officials

conducting the internal investigation following his return from China and the confiscation of the laptop computer.

## I. Sandia as an Agent of the Federal Government

### A. Parties' Positions

Defendant contends that the immunity protections of *Garrity/Kalkines* extend to him as a government contractor. He argues that that Sandia's close working relationship with the Department of Energy renders it an agency of the federal government[3] and that Sandia is a hybrid entity in that it is government-owned and contractor-operated. Doc. 170-1 at 4 ("Sixteen of the 17 National Labs operate as **government owned**, **contractor operated**, or GOGO, federally funded research and development centers. . . .") (emphasis added). However, the Court does not find this to be dispositive. The federal government owns many physical facilities that are managed and operated by government contractor companies, which do not become agents of the government simply by virtue of this relationship. Defendant claims that Sandia was an agency of the federal government because the laboratory where Dr. Huang worked, the Center for Integrated Nanotechnologies ("CINT") performed work for the benefit of DOE. This also is not persuasive, as the same can be said for private entities that perform work as contractors ultimately for the benefit of the federal government.

On the other side, the Government points out that Sandia's contract with the National Nuclear Security Administration ("NNSA") states that that persons employed by Sandia Corporation shall be and remain employees of Sandia Corporation, and "shall not be deemed" employees of the Government. Govt's Ex. 2. The Government neatly distinguishes the cases offered by Defendant in that the statements at issue in those cases were made directly to

[3] DOE is responsible for the administration of the nation's research and development of atomic energy. 42 U.S.C. §§ 2011-2096, 7151.

representatives of the federal government or the state Attorney General's Office. *See Slough*, 677 F.Supp.2d 112 (statements made by private security contractor providing security services to United States government *to* federal investigators); *Lefkowitz v. Turley*, 414 U.S. 70 (1973) (statements made by private sector employees, compelled by the New York Attorney General's office in support of a grand jury investigation). Similarly, Defendant's reliance on a case which concluded that the federal government could be liable for Sandia's conduct under the Federal Tort Claims Act does not resolve the issue, either. In *Ferguson v. U.S.*, the Northern District of California held that Sandia acted as the agent of the United States in the maintenance and security of the Livermore facility. The Court is not inclined to extrapolate from *Ferguson* a finding that Sandia stands in the federal government's shoes in having the power to violate an individual's Fifth Amendment rights. In fact, in *U.S. v. New Mexico*, the United States Supreme Court held that, despite the word "agent" added in a contract between DOE and Sandia, Sandia was not considered the "government" for purposes of immunity from state gross receipts tax. 455 U.S. 720 (1982); *see also U.S. v. State of New Mexico*, 624 F.2d 111, 120-21 (10th Cir. 1980) (concluding that Sandia Corporation was subject to the New Mexico gross receipts tax, despite Sandia's function as a procurement agency for the federal government).

The Government contends that Sandia is a private corporation owned by Lockheed Martin Corporation, and happens to have has as its customers certain agencies of the United States Government. Thus, Dr. Huang's communications with Sandia staff were all communications with private sector employees of a private corporation. The Government relies on *United States v. Solomon*, 509 F.2d 863 (2d Cir. 1975) to support its position that Sandia is not a governmental agency. Mr. Solomon was an officer of a member firm in the NY Stock Exchange (NYSE) who gave compelled responses to the NYSE's Dept. of Member Firms to

testify about financial irregularities. In that case, the district court concluded that the inquiry did not involve state action. The court found that NYSE's function in administering parts of the Securities Exchange Act was not enough to deem that NYSE was an agent of the government for purposes of *Garrity*. The court noted that, unlike the Government, NYSE did not have the power to indict someone for a crime or take someone's property for public use. The Second Circuit affirmed the lower court's conclusion that NYSE was pursuing its own interests and obligations, not as an agent of the SEC. In this case, the Government contends that Dr. Huang made his statements to Sandia, a private corporation which was conducting an internal review of Defendant's failure to follow corporate policies. The Government argues that in conducting the investigation, Sandia was pursuing its own interests, and the fact that the Government later used these statements to proceed with an investigation does not morph Sandia into the government.

A. <u>Analysis</u>

The *Solomon* case is very persuasive, and generally lines up with the case now before the Court with only a few exceptions. However, it is because of these exceptions that the Court has determined that a hearing would be appropriate for additional factual development. Defense counsel takes the stance that the FBI had targeted Defendant with a FISA ("Foreign Intelligence Surveillance Act") wiretap even before Defendant returned home from China in July of 2011. Counsel adds that if the federal government (in the form of DOE or the FBI) was compelling or directing Sandia's investigation, then Dr. Huang's statements come within the protections of the Fifth Amendment for *Garrity/Kalkines* purposes.[4] In this case, the prospect of the Government controlling or maneuvering Sandia's investigation may not be entirely unfounded. DOE appears

[4] Defense counsel also argued that the language in Count 6 which asserts that Defendant made a false statement "within the jurisdiction of the Department of Energy" implies that DOE, and not Sandia, was responsible for the questioning that took place. The Court does not find this argument convincing. The jurisdictional reference is plausible, given that Sandia is doing work for the Government, but does not necessarily mean that Sandia is an agent of the Government whenever it takes any action at all.

to exert tight control and oversight over Sandia beyond merely having a close working relationship. This has become evident as this case has progressed, with DOE imposing their preferences concerning discovery matters even though they have not intervened as a party. This may mean nothing except that DOE is an agency of the Government that tends to maintain strong control over its contractors. However, in this case there is no way to know for sure without the formality of an evidentiary hearing. While it is Defendant's burden to make a showing that a hearing is necessary, that burden is made heavier because of the difficulty in extracting any kind of discovery from Sandia, particularly if DOE maintains some control over what is released.

Defendant seeks to subpoena two Sandia employees, Neal Shinn, one of Defendant's supervisors, and Counterintelligence Officer Jacqueline Jahner. At the hearing, the Court ruled that Defendant may issue a Rule 17(c) subpoena duces tecum for Ms. Jahner and call her as a witness at the hearing. Ms. Jahner conducted Defendant's pre-briefing before he left for China in June of 2011 and was also involved in Sandia's internal investigation following the seizure of the laptop from Dr. Huang by Customs and Border Protection at the San Francisco International Airport. It is plausible that she would have personal knowledge of what role DOE may have had—if any—in the nature of the investigation that took place and whether she was coordinating activities with the FBI in its involvement with the FISA wiretap. As for Mr. Shinn, however, the Court sees no reason to call him as a witness. Defense counsel explained that they intended to ask Mr. Shinn about Sandia's policies and procedures, for example, concerning the consequences when an employee doesn't cooperate with an investigation and when an employee can be terminated. The Court finds that the policies and procedures are available to the Court and that they speak for themselves. *See* Doc. 144, Ex. A at 16-17 (failing to participate with a Corporate investigation are "grounds for disciplinary action up to and including termination").

## Conclusion

In sum, the Court finds that an evidentiary hearing is warranted with regard to the question of whether Sandia should be considered an agency of the Government. If, as a result of testimony presented at the hearing by Ms. Jahner, the Court finds that Sandia is a private entity, then the inquiry ends there and Defendant's motion will be denied in its entirety. If, on the other hand, the Court finds that Dr. Huang's statements responded to questions by the federal government using Sandia as an agent, then the parties should be prepared to proceed to the next part of the *Garrity/Kalkines* inquiry, which is to determine whether Dr. Huang's statements were compelled.

The Court grants Defendant's motion only to the extent that a hearing is granted, and to allow one witness, Ms. Jacqueline Jahner, to be subpoenaed. Because Defendant intends to issue a Rule 17(c) subpoena duces tecum to a Sandia employee Counterintelligence Officer, there obviously will be security and classified information issues that have to be resolved before the evidentiary hearing can be set. To this end, the Court **will hold a telephonic conference on Thursday, March 13, 2014, at 11:00,** to discuss preparatory details for the hearing. **Counsel are directed to telephone the Court's conference line at 505-348-2308**. The Court expects counsel for the Government and Defendant to participate in the telephonic hearing, as well as Ms. Cindy Lovato-Farmer, Sandia's general counsel.

**SO ORDERED**.

UNITED STATES DISTRICT JUDGE