IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                                  Case No. 12-CR-1246 WJ

JIANYU HUANG,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS BASED ON THE GOVERNMENT'S INTENTIONAL DESTRUCTION OF EVIDENCE**

THIS MATTER comes before the Court upon the Defendant's Motion to Dismiss Based on the Government's Intentional Destruction of Evidence (Doc. 182) filed on 02/28/14. The Defendant asks the Court to dismiss Counts 1-5 of the Superseding Indictment returned on January 22, 2014 (Doc. 132) on grounds that the Government intentionally destroyed evidence critical to his defense. In the alternative, the Defendant requests a jury instruction regarding the intentional spoliation of critical evidence.

Based on the reasons stated below, the Defendant's Motion to Dismiss is DENIED.

**BACKGROUND**

On April 26, 2012, pursuant to the consent of the deputy manager of the National Nuclear Security Administration (NNSA) Sandia Site Office, the FBI searched the office and laboratories used by Defendant at Sandia's Center for Integrated Nanotechnology (CINT). After the Defendant's employment was terminated by Sandia National Laboratory (SNL) on April 27, 2012, the FBI secured Defendant's CINT office as well as his Transmission Electron Microscope (TEM) CINT Material Sample Laboratory as a "crime scene." On April 30, 2012, the FBI

returned to Defendant's former CINT office pursuant to the consent of the deputy manager of the NNSA Sandia Site Office and photographed and seized additional materials. Then on July 3, 2012, the FBI conducted a final search of SNL's CINT TEM room pursuant once again to the consent of the deputy manager of the NNSA Sandia Site Office. Apart from these three FBI activities, Defendant's former CINT office and laboratories have continued to remain under Sandia's possession and control.

On December 31, 2013, defense counsel examined the Defendant's former office and laboratory space at SNL. He discovered that the non-charged samples and shipping envelops located within Defendant's work space had been destroyed. Defendant asserts that these allegedly destroyed materials are exculpatory in nature and that the Government intentionally destroyed them.

## LEGAL STANDARD

The United States Supreme Court has construed the due process clause of the Constitution to impose a limited duty on the government to preserve "evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488-89 (1984). The Tenth Circuit noted that for evidence to "qualify as constitutionally material in this sense," it must (1) "possess an exculpatory value that was apparent [to the police] before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489. In addition, "if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense," then the defendant must also show (3) "that the government acted in bad faith in destroying the evidence." *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

**DISCUSSION**

I. **Prong 1: Defendant Failed to Show that Allegedly Destroyed Material Possessed Exculpatory Value that was Apparent Before the Evidence was Destroyed**

Aside from stating that these non-charged materials found inside Defendant's former SNL office constitute Defendant's work, Defendant fails to identify what those materials contain or explain how those materials will exculpate the Defendant. Instead, Defendant makes vague, overbroad statements that this material will somehow show that

(1) the charged conduct in Counts 1-5 was within the scope of Defendant's work activities;
(2) that his collaboration with the Chinese scientists was no different from his collaboration with other scientists worldwide;
(3) that his scientific collaboration was no different from that of his CINT colleagues;
(4) that the alleged conduct was well known to SNL management and SNL management ratified the work that Defendant performed as charged in Counts 1-5; and
(5) that Defendant routinely had non-charged material samples shipped to his residence and that they were properly logged into the CINT material sample preparation laboratory and were reviewed on multiple occasions by various DOE safety auditors who routinely inspected the laboratory.[1]

Without identifying the content of those non-charged materials, Defendant's blanket claims that those materials have exculpatory value are unfounded. Likewise, the Defendant provides no explanation as to how it would have been apparent to the FBI, SNL or the Government that those materials in Defendant's office possessed exculpatory value. If anything, the Government points out that defense counsel did not even inspect the Defendant's former office until over a year and a half after the Defendant was arrested.

II. **Prong 2: Defendant Failed to Show that the Allegedly Destroyed Material is of Such Nature that the Defendant Cannot Obtain Comparable Evidence by Other Reasonably Available Means**

---

[1] In particular, the Court finds that Defendant's claim #5 makes no sense. The non-charged material Defendant claims has been destroyed was inside the Defendant's former SNL office. Defendant fails to explain how material found inside his office will show that the Defendant routinely had non-charged materials shipped to his residence.

3

The Tenth Circuit held in *United States v. Ludwig* that the defendant failed to establish the second step of the *Trombetta* test because he possessed two other silent video tapes of the same activity and because he "enjoyed at least one other means for obtaining comparable evidence—namely, by calling and questioning the witnesses to the event." 641 F.3d 1243, 1254 (10th Cir. 2011). Here, the Government emphasizes that the Defendant claimed several times that he has scientist witnesses through whom he will establish that scientists routinely ship work material to their residences. For example, in Doc. 91 at 2, Defendant states that "Dr. Shelnutt will describe…how those samples are routinely shipped and handled."

Regardless, an underlying yet critical problem here is that the Defendant cannot begin to assert that there is no comparable evidence to the allegedly destroyed non-charged materials if Defendant fails to identify what information was contained in those samples.

### III.     Prong 3: Defendant Failed to Show that the Government Acted in Bad Faith in Destroying the Evidence

The Defendant failed to provide any evidence that the non-charged material has any exculpatory value. Nonetheless, even if the Court were to assume that the allegedly destroyed evidence was potentially useful for the defense, the Defendant still fails to show "that the government acted in bad faith in destroying the evidence." *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994).

In *Bohl*, the Tenth Circuit applied six factors to determine whether bad faith was present:

(1) whether the government was on notice that the defendant believed the evidence to be potentially exculpatory;
(2) whether the defendant's assertion (to the government) of the potential exculpatory value was not merely conclusory but was supported by objective, independent evidence;
(3) whether the government still had possession of or the ability to control the disposition of the evidence at the time it received notice from the defendant of the evidence's potential exculpatory value;
(4) whether the destroyed evidence was central to the government's case;

    (5) whether the government offered an innocent explanation for its failure to preserve the evidence; and

(6) whether the destruction of the evidence was in accordance with standard procedure and the evidence was adequately documented prior to its destruction. *Id*. at 911-13

*Factor 1:* Here, the Government asserts that it had no notice that the Defendant believed the non-charged material had exculpatory value until well after it decided which evidence to preserve by FBI seizure. This makes sense granted that defense counsel did not inspect Defendant's former office until over a year and a half after he was arrested and more than thirteen months from current defense counsel's appointment.

Moreover, while the Defendant accuses the Government of destroying the non-charged materials, the Defendant fails to provide any evidence that the Government destroyed those documents. Rather, the Government responds that "the United States does not know what, if anything happened to the materials." Doc. 193, at 5.

*Factor 2:* Because Defendant failed to describe the contents of the non-charged materials, his assertion that the destroyed materials have potential exculpatory value is conclusory rather than supported by objective, independent evidence.

*Factor 3:* The Government had no possession or ability to control the disposition of the non-charged materials left in Defendant's SNL office at the time the Government received notice from Defendant of the evidence's potential exculpatory value. Aside from the three instances that the FBI searched and seized items from Defendant's work space, SNL retained authority and possession of the items therein.

*Factor 4:* While Defendant fails to provide any information regarding the contents of the allegedly destroyed material, he still makes baseless claims that the material would overturn the Government's critical theories. However, the Court cannot determine whether the destroyed evidence was central to the Government's case without knowing what that evidence contains.

*Factor 5:* The Government offered an innocent explanation for its failure to preserve the evidence— namely that it seized all the evidence it conceived as germane to its charged counts and left the remainder under the possession and control of the laboratory, without any direction to destroy the material.

*Factor 6:* Aside from asserting that the Government intentionally destroyed the non-charged material, Defendant fails to supply any additional information. The Government responds that if the materials actually have been destroyed, the Government presumes it was done pursuant to SNL's policies and procedures.

Because the facts examined under the light of the *Bohl* factors run in favor of the Government, the Court finds that the Government did not act in bad faith, and the Defendant has also failed to satisfy the last element of the *Trombetta* test.

## CONCLUSION

In order to dismiss the counts as Defendant requests, the Defendant must meet all three prongs of the *Trombetta* test. Because the Defendant failed to satisfy any of the three requirements, the Court DENIES the Defendant's Motion to Dismiss.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE