IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

      vs.                                   CRIMINAL NO. 12-1246 WJ

JIANYU DR. HUANG,

       Defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO SUPPRESS FRUITS OF SEARCH WARRANTS FOR DR. HUANG'S RESIDENCE AND YAHOO! ACCOUNT

THIS MATTER comes before the Court upon Defendant's Motion to Suppress Fruits of Search Warrants for Dr. Huang's Residence and Yahoo! Account because the FBI Affidavit Knowingly made False Statements in Order to Obtain the Warrants, filed January 21, 2014 (**Doc. 129**).

### BACKGROUND

Defendant moves to suppress evidence seized pursuant to two search warrants, namely, a warrant to search his home and a warrant to obtain the records of an e-mail account, on the grounds that the applications in support of the search warrants allegedly contained materially false statements.  Defendant also requests an evidentiary hearing under *Franks v. Delaware,* 438 U.S. 154 (1978).  The Government contends that the motion should be denied because Defendant has not made the required showing under *Franks.*

**I.**     **Charges in the Indictment**

The original Indictment was filed on May 23, 2012, charging Defendant with 5 counts of federal program fraud in violation of 18 USC § 666(a)(1)(A) and one count of making a false

statement, in violation of 18 U.S.C. §1001(a)(2).  The seven-count Superseding Indictment (Doc. 132, Redacted) charges Dr. Huang with five counts of Federal Program Fraud, 18 U.S.C. § 666(a)(1)(A) (Counts 1-5), alleging that Dr. Huang was an agent of Sandia National Laboratories (SNL), and that he "embezzled, stole, obtained by fraud, intentionally misapplied and without authority knowingly converted to the use of persons not the rightful owner . . . [SNL] property worth at least $5,000."   Count 6 alleges a violation of 18 U.S.C. § 1001(a)(2) (Making a False Statement, referring to Defendant's statement that  he did not intend to take his SNL laptop to China later that month); and Count 7 alleges a theft of SNL property referring to the SNL laptop computer that Dr. Huang took to China and brought back with him on his return trip (charges that Defendant transported a laptop computer belonging to SNL, and that he converted this property and took it by fraud).  Count 8 was added by another Superseding Indictment (Doc. 215), charging Deft with theft and conversion of Government property, namely electronic files and documents which took place between Apr 25, 2012 and June 2, 2012 in violation of 18 USC § 641.

**II.** **The Search Warrant Applications**

In June, 2012, U.S. Magistrate Judge Alan C. Torgerson authorized a search warrant to search Defendant's residence, and U.S. Magistrate Judge W. Daniel Schneider authorized a search warrant executed on Defendant's Yahoo! e-mail account.  Defendant claims that the affiant for both of these affidavits, FBI Special Agent Mikaila Hicks, made false statements and omissions with regard to the allegations in the Indictment there without which there would not have been probable cause to issue the warrants.

A.   The Residential Search Warrant Application

Special Agent Hicks applied for the residential search warrant on June 4, 2012, about a week after the return of the Indictment.[1]  In her application, Hicks related that Dr. Huang had been indicted for program fraud and false statements in violation of the relevant federal statutes, and that he was also potentially subject to being charged for Theft of Public Property, Smuggling and for violations of the Arms Export Control Act.  Hicks stated in part that

> the Federal Grand Jury found probable cause that Dr. Huang was using U.S. government resources and equipment to conduct research for the People's Republic of China, and he was using his personal facilities including but not limited to his home address, home telephone and personal email accounts in furtherance of this activity.

Govt's Ex. 1 at 9, ¶17.  Hicks also explained why there was probable cause to believe that computers and other devices containing evidence of these offenses would be found at Dr. Huang's residence, noting that Dr. Huang was an individual who appeared to be a "prolific" record keeper.  ¶18.  The affidavit goes into more detail concerning the basis for considering Dr. Huang for a potential violation of the International Trafficking in Arms Regulations ("ITAR").  Judge Torgerson found that the application to search Dr. Huang's residence was supported by probable cause, and granted the search warrant.  The warrant was executed on June 2, 2012, the same day that Dr. Huang was arrested on charges in the Indictment.

B.      The Yahoo!! Warrant Application

About two weeks later, SA Hicks applied for another search warrant associated with Dr. Huang's Yahoo!! e-mail account almost two weeks later.  The application contained much of the same information that was in the residential warrant application, including the statement that the grand jury had found probable cause to believe that Dr. Huang was using U.S. government

---

[1]   The Government gives a date of June 1 for the application of the residential warrant.  Doc. 155 at 3.

resources and equipment to conduct research for the People's Republic of China.  Ex. 2 at 2, ¶ 5. It added information about the specific Yahoo! account at issue. For example, the Yahoo! warrant application stated that SNL Office of Counterintelligence had monitored Dr. Huang's work e-mail pursuant to "banner authority," that is, on the strength of the notice given to all SNL employees that they have no expectation of privacy in the work e-mail messages.   The application went on to state that the monitored work e-mails showed that Dr. Huang admonished those communicating with him to use his Yahoo! e-mail address rather than his work e-mail. *Id*. at 4, ¶ 6.  The monitored e-mails also showed that Dr. Huang's work e-mails cited his Yahoo! e-mail address as another means of contacting him. Id. The Yahoo! warrant application also stated that the external hard drive seized from Dr. Huang at the San Francisco Airport in July 2011 which contained the potential ITAR document also contained copies of e-mails using Dr. Huang's Yahoo! e-mail account. Id. at 5-6, ¶ 9.   Judge Daniel Schneider found that this application was supported by probable cause, and granted the warrant.

In challenging the integrity of the affidavits, Defendant focuses on two discrete paragraphs:  paragraph 17 of the affidavit supporting the search of Defendant's house, and paragraph 5 of the affidavit for the Yahoo! email account.  Paragraph 17 states, inter alia, that

> the Federal Grand Jury found probable cause that Dr. Huang was using U.S. government resources and equipment to conduct research for the People's Republic of China, and he was using his personal facilities including but not limited to his home address, home telephone and personal email accounts in furtherance of this activity.

Govt's Ex. 1, Resp., Residential Warrant Appl.   Paragraph 5 of the affidavit for the search of the Yahoo! email account states, inter alia, that

> the Federal Grand Jury found probable cause that Dr. Huang was using U.S. government resources and equipment to conduct research for the People's Republic of China**,** and he was using his personal facilities

4

>including but not limited to his home address, home telephone and personal
>email accounts, including jyDr. Huang8@Yahoo!.com, in furtherance of
>this activity.

Govt's Ex. 2, Resp., Yahoo!! Warrant Appl. Defendant claims these statements are false because the Indictment makes no reference to Dr. Huang conducting research for the People's Republic of China, or that the alleged theft was for the benefit of a nation state, particularly the People's Republic of China. Defendant also contends that SA Hicks knowingly omitted exculpatory information by failing to inform Judge Torgerson and Judge Schneider that although a FISA wiretap had been authorized to capture all of Defendant's cell phone, work phone and home phone communications, no incriminating evidence had been discovered, and Defendant had not been charged with violating any national security criminal statute.

## DISCUSSION

### I.   Legal Standard

The Fourth Amendment provides that probable cause be determined by a neutral and detached magistrate provided with sufficient truthful facts on which to make a probable cause determination based on a totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213 (1983); *Franks v. Delaware*, 438 U.S 154, 164-65 (1978). Thus, in considering whether the affidavits supported probable cause, Magistrate Judges Torgerson and Schneider were required to make a practical decision whether, given the circumstances presented to them, there was a fair probability that contraband or evidence of a crime would be found at a particular place. *Id* at 238; *see Jones v. U.S.,* 362 U.S. 257, 271 (1960) (in reviewing a probable cause determination by a magistrate judge, court must decide whether the magistrate judge had a substantial basis for concluding that a search would uncover evidence of wrongdoing).

Under *Franks,* a defendant can challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information. Franks, 438 U.S. at 155–56). The Tenth Circuit has extended the *Franks* framework to omissions of material information. *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). A preliminary showing of false information or omissions is not sufficient to successfully challenge an affidavit to a search warrant. *See United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) ("Under *Franks*, a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause."). Instead, the defendant must show that the affiant knowingly falsified information or recklessly disregarded the truth, not simply that information was omitted from the affidavit or that the information wasn't completely true. *See United States v. Owens*, 882 F.2d 1493, 1498-99 (10th Cir. 1989) ("it is not enough to show that . . . an affiant's negligence or innocent mistake resulted in false statements in the affidavit").

**II.     Analysis**

Defendant claims that SA Hicks both knowingly misrepresented facts and knowingly omitted materially exculpatory facts in the affidavits and that a *Franks* hearing is appropriate and necessary.

A.     *Franks* Hearing

The question here is whether an evidentiary hearing, *Franks* hearing, is necessary. Under *Franks,* a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements

and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause.  438 U.S. at 155-56.

If a court determines that a *Franks* hearing is necessary, "great deference," is usually afforded to the magistrate's probable cause determination.  However, no such deference will be afforded if the supporting affidavit fails to provide "a substantial basis for concluding that probable cause existed." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998).  If, at the hearing, the defendant establishes **by a preponderance of the evidence** that the false statement was included in the affidavit by the affiant or that a material omission was made "knowingly and intentionally, or with reckless disregard for the truth," and the false statement or material omission were "necessary to the finding of probable cause," then the Supreme Court has ruled that "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."  *Franks*, 438 U.S. at 155-56.

B.  Misrepresentation of Facts

Defendant's alleged misrepresentation of facts is premised on this statement found in both applications: "Specifically, the Federal Grand Jury found probable cause that Dr. Huang was using U.S. government resources and equipment to conduct research for the People's Republic of China, and he was using his personal facilities including but not limited to his home address, home telephone and personal email accounts in furtherance of this activity."

The actual language in Counts One and Two in the Indictment specifies that Dr. Huang "converted SNL property to his own use, to the use of members of the staff of the Harbin Institute of Technology in the People's Republic of China, and others unknown to the grand jury."  Count Three alleges that Dr. Huang "converted SNL property to his own use, to the use of members of the staff of Peking University in the People's Republic of China, and to the use of

7

others unknown to the grand jury." Count Four alleges that Dr. Huang "converted SNL property to his own use, to the use of members of the staff of Xiamen University in the People's Republic of China, and to the use of others unknown to the grand jury." Count Five alleges that Dr. Huang "converted SNL property to his own use, to the use of members of the staff of the Chinese Academy of Science, Institute of Physics, and the Shanghai Institute of Ceramics." Thus, the affidavit would have been more accurate in describing the beneficiary of the conduct charged in Counts One through Five as the four Chinese institutions actually referenced in the Indictment.

The Government concedes that the language referring to the beneficiary of Dr. Huang's conduct is inartful and was even a "poor choice of words," but maintains that it is not a misrepresentation of facts that meets the threshold for a *Franks* hearing, and the Court agrees. The applications would still support probable cause even if these inaccuracies were omitted from the applications. The applications accurately stated that Dr. Huang had been indicted on multiple counts of federal program fraud and one count of making a false statement and accurately established probable cause to believe that evidence of these offenses would be found at Dr. Huang's residence and in his Yahoo! e-mail account. The applications accurately stated that samples of the materials that were the subject of the Indictment were recovered at Dr. Huang's workspace, and that shipping invoices showed that the samples had been shipped to Dr. Huang's residence, Ex. 1 at 10, ¶ 19; they accurately stated that Dr. Huang had told his supervisor that he had SNL documents at home on his personal media, and that Dr. Huang had refused to return them, *Id.*, ¶ 20; they accurately stated that Dr. Huang had been in possession of an SNL laptop and hard drive at San Francisco International Airport on July 18, 2011, that Dr. Huang had admitted that he did not have SNL's consent to take these items with him to China, and that a

8

document potentially regulated by the ITAR was on the hard drive. *Id*. at 11, ¶ 21.  The application in support of the Yahoo! warrant also accurately stated that Dr. Huang's monitored work e-mails showed that he admonished those communicating with him to use his Yahoo! e-mail address instead of his official e-mail account, and showed that copies of e-mails from his Yahoo! account were on the external hard drive seized at the San Francisco Airport. Ex. 2 at 4, ¶ 6, and 5-6, ¶ 9.

The Court recognizes the inaccuracy of a single sentence in the applications, but finds no showing that this language meets the threshold for a *Franks* hearing.  It is plausible that from a common-sense standpoint, that the affiant meant the stated language to succinctly summarize how she viewed the beneficiary of Dr. Huang's alleged conduct.  Defendant has not shown by a preponderance of the evidence that the statement, even if considered technically false, was made "knowingly and intentionally, or with reckless disregard for the truth," and the false statement was "necessary to the finding of probable cause."

C.    Omissions of Exculpatory Facts

Defendant also argues that the warrant applications should have made reference to the FISA surveillance in this case, and that this failure constitutes a material omission.  The Government is absolutely correct that this was neither an omission nor was it material—much less an intentional or reckless one.  Defendant is essentially arguing that because he was not charged with espionage offenses, that was somehow exculpatory as to the program fraud and false statements charges.  This contention has no merit at all.  First, the fact that Defendant was not charged with espionage/terrorist offenses or ITAR violations has no relationship to the charges for federal program fraud and false statement charges.  Second, the fact that charges were not brought against Defendant as a result of the FISA wiretap does NOT necessarily mean

that the Government failed to uncover any incriminating evidence. It may mean that no incriminating evidence was uncovered or it may mean that the Government did uncover such evidence, but decided not to pursue such charges at this time.

C. A *Franks* Hearing Is Not Required

Defendant contends that only a hearing can determine whether SA Hick's "poor choice of words" was made intentionally, but Defendant seems to overlook his burden to make a "substantial showing" that the affidavit contains intentional or reckless false statements. A "poor choice of words" alone doesn't meet this standard, particularly in this context where the consequences of the choice of language is relatively inconsequential. In addition, there were a sufficient number of other accurate statements in the affidavit's application to support a finding of probable cause. Similarly, there is no reason to inquire into whether the omission of a reference to the FISA surveillance in this case was exculpatory when there is no basis to consider this reference to be exculpatory in the first place.

Also, the Court notes that Defendant has requested that the Court withhold ruling on this motion until it rules on Defendant's other motion to produce the FISA affidavit (Doc. 128). Defense counsel claims that he would have a "better understanding of the false statement and a better ability to litigate the intentional and reckless nature of how the false statement was made with the benefit of the FISA affidavit." Doc. 169 at 2. This request assumes that Defendant will be granted disclosure of the FISA affidavit, which is not going to happen in this case, as will be described by separate Order.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Fruits of Search Warrants for Dr. Huang's Residence and Yahoo! Account because the FBI Affidavit Knowingly made False

Statements in Order to Obtain the Warrants **(Doc. 129)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.  Defendant has not made a substantial showing that the affidavit contained intentional or reckless false statements and that the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause.  Thus, the Court finds there is no reason to have a *Franks* hearing, and thus no reason to suppress the fruits seized pursuant to the warrants.

_____
UNITED STATES DISTRICT JUDGE