## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                                   CRIMINAL NO. 12-1246 WJ

JIANYU HUANG,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S AMENDED MOTION FOR DISCLOSURE OF FISA APPLICATIONS AND CERTIFICATIONS AND TO SUPPRESS THE FRUITS OF INTERCEPTIONS MADE PURSUANT TO THE FISA SEARCH WARRANT[1]

THIS MATTER comes before the Court upon Defendant's Amended Motion for Disclosure of FISA Applications and Certifications and to Suppress the Fruits of Interceptions Made Pursuant to the FISA Search Warrant, filed January 21, 2014 (**Doc. 128**). Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.[2]

## BACKGROUND

In this motion, Defendant alleges a misuse of a Foreign Intelligence Surveillance Act (FISA) wiretap that was used to monitor Defendant's office and home phone from October 2011 through June 2012, and raises procedural and constitutional issues concerning the FISA application. The eight-count Superseding Indictment (Doc. 132, Redacted) charges Defendant

---

[1]  The Court will file separately a Notice of Filing of a Memorandum Opinion and Order which includes additional information from the submitted FISA material. That Memorandum Opinion and Order shall be filed as a sealed, ex parte order based on the Court's finding herein that no part of the FISA collection will be disclosed to defense counsel because the sealed, ex parte order will contain some reference to classified material.

[2]  The government has filed a publicly available response to the motion (Doc. 207) and another response which has been designated classified with accompanying classified materials as exhibits. *See* Doc. 208 (Notice of Filing in Camera and Under Seal with the Classified Information Security Officer).

with using U.S. government resources and equipment to conduct research for the People's Republic of China. Part of the alleged conduct is that Dr. Huang "stole" TEM (Transmission Electron Microscope) time to review nano-materials at SNL. Defendant moves for (1) disclosure of the application papers submitted by the government and all court orders issued pursuant to the Foreign Intelligence Surveillance Act (FISA); (2) disclosure of the names of Sandia National Laboratories (SNL) employees and agents who were made privy to FISA information in this case; and (3) for suppression of all FISA derived evidence. Defendant also requests that the Court conduct an adversary hearing (a *Franks* hearing) to determine the issues raised by the Motion to Suppress.

Defendant challenges the FISA warrant and monitoring in this case on two grounds. First, he claims that the Government obtained Defendant's phone conversations while he was in the United States, which was a procedural violation of FISA. Second, Defendant contends that the FISA process was used to sidestep ordinary constitutional requirements to bolster a "traditional" criminal investigation. Defendant notes that an ongoing criminal investigation of Dr. Huang started prior to the approval in April 2011 of Dr. Huang's trip to China and that when the criminal investigation yielded no result, the government resorted to FISA surveillance. As a result, the Government violated the Fourth Amendment (substantive violation) by circumventing the probable cause requirements of a traditional Title III wiretap. Defendant argues that there is no evidence that Dr. Huang was acting as an 'agent of a foreign power" and raises the possibility of *Franks* violations in the FISA application papers.

Defense counsel claims that, at a minimum, he and Dr. Huang should be permitted to review the warrant and affidavit, especially if any personnel from Sandia viewed such or had input into its formulation, in order to determine whether any of those individuals had motive or

bias.  Defendant argues that, at a minimum, this Court should view the FISA warrant and affidavit *in camera* to determine if there are any exculpatory matters that must be disclosed. However, the Court has carefully reviewed the FISA warrant, affidavit, and all supporting material, and has determined that a hearing is not necessary, and that disclosure is not appropriate.

The government filed a Notice (Doc. 20) that it intends to offer into evidence information obtained from FISA surveillance.  The government opposes Defendant's requests but also maintains that the FISA information at issue was lawfully acquired and that the electronic surveillance and physical searches were conducted in conformity with an order of authorization or approval, and requests (1) that the Court deny the defendant's request that the FISA information be suppressed; and (2) order that none of the FISA materials be disclosed to the defense, and instead, that they be maintained by the United States under seal.

## DISCUSSION

### I.        Statutory Framework

The FISA was enacted in 1978 and was subsequently amended.  FISA authorizes the Chief Justice of the United States to designate eleven United States District Judges to sit as judges of the Foreign Intelligence Surveillance Court (FISC).  50 U.S.C. § 1803(a)(l). The FISC judges are empowered to consider ex parte applications submitted by the Executive Branch for electronic surveillance and physical searches when the government demonstrates that a "significant purpose" of the application is to obtain foreign intelligence information, as defined in FISA.

The government may conduct electronic surveillance only after applying for and obtaining an order from the FISC.  The application must be approved by the Attorney General

and must include certain specified information.   See 50 U.S.C. §§ 1804(a) (electronic surveillance), 1823(a) (physical searches).  This information includes:

> (1) the identity of the federal officer making the application;
> (2) the identity, if known, or a description of the specific target of the electronic surveillance;
> (3) a statement of the facts and circumstances supporting probable cause to believe that the target is a foreign power or an agent of a foreign power, and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;
> (4) a statement of the proposed minimization procedures to be followed;
> (5) a description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;
> (6) a certification, discussed below, of a high-ranking official;
> (7) a summary of the manner or means by which the electronic surveillance will be effected and a statement whether physical entry is required to effect the electronic surveillance;
> (8) the facts concerning and the action taken on all previous FISA applications involving any of the persons, facilities, or places specified in the application; and
> (9) the proposed duration of the electronic surveillance.

50 U.S.C. § 1804(a)(1)-(9).  An application to conduct a physical search pursuant to FISA must contain similar information as an application to conduct electronic surveillance except that an application to conduct a physical search must also contain a statement of the facts and circumstances that justify an applicant's belief that "the premises or property to be searched contains foreign intelligence information" and that each "premises or property to be searched is or is about to be, owned, used, possessed by, or is in transit to or from" the target.  50 U.S.C. §§ 1823(a)(1)-(8).

        Under the FISA Amendments Act of 2008, three main requirements must be met for the FISC to approve the application.  First, the Government must establish, and a judge must find, probable cause to believe that the "target" of the surveillance is a "foreign power" or an "agent of a foreign power," and that the target is using, or is about to use, the "facility" that is the

subject of the order.   50 U.S.C. §1804(a)(3).[3]  Second, the application must include "minimization procedures" for the surveillance as defined by the statute. 50 U.S.C. §1801(h)(3); §1805(a)(3).   Third, the Attorney General must approve the application and a high-ranking national security official must certify that the information being sought is foreign intelligence information; that obtaining foreign intelligence information is a "significant purpose" of the surveillance; and that the information cannot reasonably be obtained by normal investigative techniques.[4]

Once approved by the Attorney General, the application is submitted to the FISC and assigned to one of its judges. The FISC may approve the requested electronic surveillance, physical searches, or both, only upon finding, among other things, that:

(1) the application has been made by a "Federal officer" and has been approved by the Attorney General;

(2) there is probable cause to believe that (A) the target of the electronic surveillance and/or physical search is a foreign power or an agent of a foreign power, and that (B) the facilities or places at which the electronic surveillance is directed are being used, or are about to be used, by a foreign power or an agent of a foreign power (or that the premises or property to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power);

(3) the proposed minimization procedures meet the statutory requirements set forth in 50 U.S.C. § 1801(h) (electronic surveillance) and 50 U.S.C. § 1821(4) (physical search);

(4) the application contains all of the statements and certifications required by Section 1804 or Section 1823; and (5) if the target is a United States person, that the certifications are not clearly erroneous.

---

[3]  "Agent of a foreign power" is defined in 50 U.S.C. §1801 to include "any person other than United States person" (§1801(b)(1)) and "any person who. . . knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power . . . ." (§1801(b)(2)(A).

[4]  See 50 U.S.C. § 1804(a)(7).  Foreign intelligence information" is defined in 50 U.S.C. §1801(e).   It generally means information that (if concerning a United States person) is necessary to the ability of the United States to protect itself against actual or potential attack, sabotage or clandestine activities by a foreign power, and (if concerning a foreign power) is necessary to the country's national defense or security.

50 U.S.C. §§ 1805(a)(1)-(4), 1824(a)(1)-(4).   If the court approves the application, the court's order must specify where and how the surveillance will be carried out, must limit the duration of the surveillance, and must require compliance with FISA's minimization procedures. §§1805(c)(1)(B)-(E), (c)(2)(A), (e)(1).

## II.   Review by District Court

The purpose of judicial review is to ascertain whether the FISA information was lawfully acquired.   In evaluating the legality of the FISA collection, the district court's review should determine: (1) whether the application established the probable cause required by FISA; (2) whether the certification submitted by the Executive Branch in support of a FISA application was properly made; and (3) whether the collection was properly minimized. *See U.S. v. Abu-Jihaad,* 630 F.3d 102, 130-31 (2d Cir. 2010).

## A.   Initial In Camera, Ex Parte Review

FISA envisions that initial review of a FISC Order is to be conducted in camera and ex parte.  On the filing of the Attorney General's affidavit or declaration, the court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance [or physical search] only where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or search]." 50 U.S.C. §§ 1806(f), 1825(g) (emphasis added).   In this case, the Attorney General has filed the requisite affidavit ("Declaration and Claim of Privilege") that triggers this process and has declared that disclosure or an adversary hearing would harm national security.   *See* Ex. 1 (Doc. 207-1).   The constitutionality of FISA's in camera, ex parte review provisions has been affirmed by every federal court that has considered the matter. *See, e.g., El-Mezain*, 664 F.3d at 567; *Abu-Jihaad*, 630 F.3d at 117; *United States v. Damrah*, 412 F.3d 618 (6th Cir. 2005); *U.S.*

6

*v. Belfield,* 692 F.2d 141 (D.C. Cir. 1982) (§ 1806(f) "is an acceptable means of adjudicating the constitutional rights of persons who have been subjected to FISA surveillance").

The in camera, ex parte review of FISA applications and related materials is done in order to determine whether FISA information was lawfully acquired and whether the surveillance and searches were made in conformity with an order of authorization or approval. Disclosure may be ordered only if the district court cannot make an accurate determination of the legality of the surveillance or search.   Such a need might arise:

> if the judge's initial review revealed **potential irregularities** such as "**possible misrepresentation of fact, vague identification of the persons to be surveilled or surveillance records which include[] a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.**"  Senate Report 95-604, at 58, reprinted in 1978 U.S. Code Cong. & Ad. News 3904, 3960.  In general, however, "ex parte, in camera determination is to be the rule."

*United States v. Duggan,* 743 F.2d 59, 78 (2d Cir. 1984) (emphasis added); 50 U.S.C. §1806(f) (permitting disclosure only where the court finds that it is unable to determine legality of the surveillance based on its in camera, ex parte review alone and without the assistance of defense counsel).   This means that the propriety of the disclosure of any FISA applications or orders to the defendant may not even be considered unless and until the district court has first concluded that it is unable to make an accurate determination of the legality of the acquired collection of information after reviewing the government's submissions (and any supplemental pleadings that the district court may request) in camera and ex parte. *See El-Mezain*, 664 F.3d at 565; *United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010).  Further, if the district court is able to make an accurate determination of the legality of the electronic surveillance, physical searches, or both, based on its in camera, ex parte review of the materials submitted by the United States,

then the court may not order disclosure of any of the FISA materials to the defense, unless otherwise required by due process.  *El-Mezain*, 664 F.3d at 566; *Duggan*, 743 F.2d at 78.

B.      Standard of Review

        The Tenth Circuit has not determined whether a de novo or deferential standard of review applies to FISC's probable cause determination.  The government contends that the material under review here will satisfy either standard, but concedes that many courts have reviewed the FISC's probable cause determination from a *de novo* standard, and only a small group of other courts, including *Abu-Jihaad* in the Second Circuit, have afforded due deference to the findings of the FISC.[5]  Notwithstanding the government's urging to adopt a deferential standard and absent specific guidance from the Tenth Circuit on this legal issue, the Court decided in this particular case to conduct a  de novo review of the FISC's probable cause determination.

III.    **Probable Cause**

        The probable cause standard applicable to a review of a FISA warrant is different from probable cause determinations for search warrants in other criminal cases.  FISA requires findings of probable cause to believe that the target is a foreign power, or an agent of a foreign power, and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, or that the property or premises to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power.  *See United States v. El-Mezain*, 664 F.3d 467, 564 (5th Cir. 2011) ("[t]his probable cause standard is different from the standard in the typical criminal case because, rather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on

---

[5]  *See also U.S. v. Ahmed,* No. 1:06-CR0147, 2009 U.S. Dist. Lexis 120007 at *21-22 (N.D.Ga. Mar. 19, 2009) (FISC's "determination of probable cause should be given 'great deference' by the reviewing court") (citing *Illinois v Gates,* 462 U.S. at 236)).

the status of the target as a foreign power or an agent of a foreign power"); *see also United States v. United States District Court* [Keith, J.], 407 U.S. 297, 308, 321–22 (1972) (hereinafter referred to as "*Keith*); *see also U.S. v. Duggan*, 743 F.2d 59, 72 (C.A.N.Y., 1984) investigations differ substantially from those presented in traditional criminal investigations); *see also Abu-Jihaad*, 630 F.3d at 130-31; *U.S. v. Cavanagh,* 807 F.2d 787, 790 (9th Cir. 1987) (citing *United States v. United States District Court* (Keith), 407 U.S. 297, 322 (1972)).  This "different, and arguably lower, probable cause standard . . . reflects the purpose for which FISA search orders are issued." *U.S. v. Ahmed*, No. 1:06-CR0147, 2009 U.S. Dist. Lexis 120007 at *21-22 (N.D.Ga. Mar. 19, 2009) (FISC's "determination of probable cause should be given 'great deference' by the reviewing court") (citing *Illinois v. Gates*, 462 U.S. at 236).

Defendant's contention that the FISA wiretap circumvented the probable cause requirement of a traditional Title III wiretap is meritless.  While the FISA probable cause standard is not premised on the commission of a crime, nevertheless it has been found to comport with the Fourth Amendment.  *U.S. v. Isa*, 923 F.2d 1300, 1304 (8th Cir. 1991); *Ning Wen*, 477 F.3d at 898 (holding that FISA is constitutional despite using "a definition of 'probable cause' that does not depend on whether a domestic crime) (quoting *United States v. United States District Court (Keith*), 407 U.S. 297) (1978); *Duggan*, 743 F.2d at 73-74 (holding that FISA does not violate the Fourth Amendment).  Contrary to Defendant's representations, this standard does not eliminate the requirement that the target is found to be an agent of a foreign power.  *See* 50 U.S.C. §1804(a)(3)(A).  Defendant also raises an argument that surveillance in this case violated FISA because it was conducted while Defendant was still in the United States, but in doing so, makes the mistake of relying on 50 U.S.C. §1881.  These are FISA provisions relating to "Additional Procedures Regarding Certain Persons Outside the United States," contained in

Subchapter VI.  Contrary to Defendant's inferred argument, FISA does not specifically prohibit surveillance and search of United States persons, which is governed by the provisions in Subchapter I (electronic surveillance) and Subchapter II (physical searches); *see* n. 2 above referring to §1801(b)(2)(A) and 50 U.S.C. § 1821 (relying on definitions in section 1801).

The Court has considered the material submitted by the government in camera and ex parte, and is thoroughly persuaded that this probable cause standard was met in the FISA applications as the basis for the FISA warrants.

## IV.    Certification Requirement

The current version of FISA requires that "a significant purpose" of the surveillance or search is to obtain foreign intelligence information. 50 U.S.C. §§ 1804(a)(7)(B), 1823(a)(7)(B) (2006).  An application to FISC for a FISA order must also include a certification from a high-ranking executive branch official with national security responsibilities, where the official certifies, inter alia, that a "significant purpose" of the surveillance is to obtain foreign and that such information cannot reasonably be obtained by normal investigative techniques.  50 U.S.C. §1804(a)(6); *see also* 50 U.S.C. §1823(a)(6).

The Court here applies a de novo review to determine the legality of the FISA surveillance and search, but also acknowledges that deference is to be afforded in a review of the certifications.  Certifications submitted in support of a FISA application should be "subjected only to minimal scrutiny by the courts," *U.S. v. Badia,* 827 F.2d 1458, 1463 (11th Cir. 1987), *Badia*, 827 F.2d at 1463, and are "presumed valid." *Duggan*, 743 F.2d at 77 & n.6 (citing *Franks v. Delaware*, 438 U.S. at 171); *United States v. Sherifi*, 793 F. Supp. 2d 751, 760 (E.D.N.C.2011) ("a presumption of validity [is] accorded to the certifications").   When a FISA application is presented to the FISC, "[t]he FISA Judge, in reviewing the application, is not to

second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Duggan*, 743 F.2d at 77.  Likewise, Congress intended that the reviewing district court should "have no greater authority to second-guess the executive branch's certifications than has the FISA judge." *Id.*

Thus, the purpose of the Court's review here is to determine whether the certifications were made in accordance with FISA's requirements.  *See United States v. Alwan*, No. 1:11-CR-13, 2012 WL 399154, at *7 (W.D. Ky. Feb. 7, 2012) ("the [c]ourt is not to second-guess whether the certifications were correct, but merely to ensure they were properly made").  When the target is a United States person, then the district court should also ensure that each certification is not "clearly erroneous." *Badia,* 827 at 994.   A "clearly erroneous" finding is established only when "although there is evidence to support it, the reviewing court on the [basis of the] entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co*., 333 U.S. 364, 395 (1948); *United States v. Garcia*, 413 F.3d 201, 222 (2d Cir. 2005); *United States v. Islamic Am. Relief Agency ("IARA"),* No. 07-00087-CR-W-NKL, 2009 WL 5169536, at * (W.D. Mo. Dec. 21, 2009) (identifying "clearly erroneous" standard of review for FISA certifications).

Defendant claims that the government did not have a "significant purpose" in obtaining "foreign intelligence information" but instead, the FISA wiretap was an excuse to build whatever legal case it could against Dr. Huang.   Defendant seems to infer that the initiation of criminal prosecution against Dr. Huang eliminated the need for foreign intelligence gathering, and thus there was no "significant purpose" to the wiretap.    However, Defendant is incorrect that a criminal prosecution is inconsistent with the "significant purpose" requirement in FISA, because FISA allows the use of evidence derived from FISA surveillance and searches in criminal

prosecutions. 50 U.S.C. §§ 1806(a), 1825(a).  *In re Sealed Case*, 310 F.3d 717, 725 (FISC of Rev. 2002) (noting that government's foreign policy concerns do not recede once the government moves to criminal prosecution, since "arresting and prosecuting . . . spies for . . . a foreign power may well be the best technique to prevent them from successfully continuing their terrorist activities"); *United States v. Duka*, 671 F.3d 329, 329 (3d Cir. 2011) (the "significant purpose" standard "reflects a balance struck by Congress . . . to promote coordination between intelligence and law enforcement officials in combating terrorism, acknowledging that, as a practical matter, these functions inevitably overlap").

The Court has carefully reviewed the materials provided by the government for in camera review and finds that the certification submitted by the Executive Branch in support of a FISA application was properly made and fulfills all FISA requirements for certification.

**V.      Minimization**

The Attorney General has adopted, and the FISC has approved, minimization procedures that regulate the acquisition, retention, and dissemination of non-publicly available information concerning unconsenting United States persons obtained through FISC-authorized electronic surveillance or physical searches, including persons who are not the targets of the FISA authorities.   FISA requires that such minimization procedures be:

> reasonably designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information.

50 U.S.C. §§1801(h)(1), 18221(4)(A).    The Court has carefully reviewed the FISA collection submitted ex parte and in camera and finds that the government followed the relevant minimization procedures to appropriately minimize the information acquired pursuant to FISA.

In addition, the materials contain the requisite signature and approval by the Attorney General regarding electronic surveillance, physical searches, or both, before the application was presented to the FISC.

## VI.   *Giglio* **Provides No Basis for Disclosure**

Under *Giglio v. United States*, 450 U.S. 150 (1972), the government is required to disclose to the defense evidence pertaining to the credibility of government witnesses.  *United States v. Molina*, 75 F.3d 600, 602 (10th Cir.), cert. denied, 116 S.Ct. 2510 (1996) (citation omitted).   Defense counsel has intimated that the FISA collection submitted for the Court's review contains material which implicates *Giglio,* in that certain individuals at Sandia had been given access to FISA materials and shown FISA information, and that such information could impeach that person's credibility. *See* Doc. 128 at 6.   However, counsel offers no basis at all for this speculation and thus, there is no reason for disclosure of any of the FISA collection on that basis. *See, e.g., U.S. v. Aguilar,* 2010 WL 2977708, at *7 (D.N.M.) (where court noted that it had been given "no reason to conclude that background information on the [confidential informant] will be inherently exculpatory").

## VII.   *Franks* **Hearing Not Warranted**

In addition to requesting the FISA affidavit or application, Defendant requests that the Court conduct an adversary hearing in order to determine the issues raised by the Motion to Suppress.   Defendant argues that there is no evidence that Dr. Huang was acting as an "agent of a foreign power" and raises the possibility of *Franks* violations in the FISA application documents.

Under *Franks v. Delaware,* 438 U.S. 154 (1978), a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the

affidavit contains intentional or reckless false statements and that the misrepresentation was essential to the finding of probable cause. 438 U.S. at 155-56.   The defendant's burden in establishing the basis for a Franks hearing is a heavy one.  *United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994).  A defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."  *Franks*, 438 U.S. at 171; *U.S. v. Kashmiri,* 2010 WL 4705159, at * 6 (N.D. Ill. Nov. 10, 2010) (without a showing that an Executive Branch officer knowingly and intentionally, or recklessly, included a false statement in the FISA application, defendant was foreclosed from obtaining a hearing); *Duggan*, 743 F.2d at 77 n.6. Failure of the defendant "to satisfy either of these two prongs proves fatal to a *Franks* hearing." *Kashmiri*, 2010 WL 4705159, at * 5; *U.S. v. Mubayyid,* 521 F.Supp.2d 125, 130-31 (D.Mass. 2007).

Defendant has not offered anything more than conclusory speculations about allegations of falsehoods in the FISA affidavit.  The Court acknowledges that without access to the FISA affidavit, Defendant is constrained from making an examination of the affidavit in the first place. However, as the government notes, this is no reason to abandon the *Franks* threshold.   If a defendant need only allege a speculative *Franks* violation in order to force disclosure of FISA materials, the result would be incongruous with Congress' intention that FISA materials should be reviewed in camera and ex parte.  *See also U.S. v. Colkley,* 899 F.2d 297, 301-02 (4th Cir. 1990) (noting that the *Franks* threshold is not met even by an offer of proof of an impropriety that might have affected the outcome of the probable cause determination, but rather requires one that was "necessary to the finding of probable cause").   In the instant case, the Court finds that Defendant has not made a substantial showing that the FISA affidavit contained intentional or reckless false statements and that the misrepresentation was essential to the finding of probable

cause.  Accordingly, the Court finds there is no reason to have a *Franks* hearing, and thus no reason to suppress the fruits seized pursuant to the warrants.

## CONCLUSION

In sum, the Court rejects all of Defendant's arguments for disclosure of the FISA application or other FISA related material.   The Court had no difficulty determining the legality of the FISA surveillance and/or search so disclosure of FISA material is clearly not warranted in this case.

The Court also finds and concludes that the FISA materials did not contain any exculpatory information which the government is required to disclose under *Giglio,* and that the FISA application met the relevant probable cause and "significant purpose" standard.  Part of the probable cause presentation in this case included the requisite certification from a high-ranking executive branch official with national security responsibilities, wherein it was certified that a "significant purpose" of the surveillance is to obtain foreign and that such information cannot reasonably be obtained by normal investigative techniques.   This certification was legally supportable.   Finally, the government followed the relevant minimization procedures to appropriately minimize the information acquired pursuant to FISA.

The Court also finds and concludes that Defendant has not made a substantial showing necessary to hold a *Franks* hearing, and thus, there is no reason to suppress the fruits seized pursuant to the warrants.

Finally, because the Court has determined that the FISC orders were supported by probable cause, and that all the relevant FISA certification requirements were met, there is no need to consider the "good faith" exception to the exclusionary rule articulated in *U.S. v. Leon,*

468 U.S. 897 (1984) (exclusionary rule precludes admission of evidence tainted by a Fourth Amendment violation in cases where its application will deter police misconduct).

**THEREFORE,**

**IT IS ORDERED** that Defendant's Amended Motion for Disclosure of FISA Applications and Certifications and to Suppress the Fruits of Interceptions Made Pursuant to the FISA Search Warrant **(Doc. 128)** is DENIED.    Based on the Court's ex parte and in camera review of the FISA materials submitted by the government for review, the Court has determined that there should be no disclosure to defense counsel because (1) the Court was able to conclusively determine that information acquired was lawfully acquired; that the electronic surveillance or physical searches were conducted in conformity with the order of authorization or approval, and according to the relevant minimization procedures; and (2) the Court finds no basis for as *Franks* hearing, and therefore no basis to suppress any of the evidence collected pursuant to the FISA application and warrant issued by the FISC court.

_____
UNITED STATES DISTRICT JUDGE