IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

    vs.                              CRIMINAL NO. 12-1246 WJ

JIANYU HUANG,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING GOVERNMENT'S FIRST MOTION IN LIMINE**
**TO BAR ADMISSION OF DEFENDANT'S PRIOR LAWFULCONDUCT**

THIS MATTER comes before the Court upon the Government's First Motion in Limine to Bar Admission of Defendant's Prior Lawful Conduct, filed April 14, 2014 **(Doc. 235)**. Having reviewed the parties' briefs and applicable law, and considered counsel's arguments at a hearing on the matter, I find that the Government's motion has merit and shall be GRANTED.

**BACKGROUND**

In this motion, the Government moves to exclude admission of specific instances of Defendant's Prior Uncharged Work for Sandia National Laboratories ("Sandia"), on the grounds that such evidence is inadmissible under Federal Rules of Evidence 401 and 402 for lack of relevance, under Rule 403 as misleading and confusing to the jury, and under Rules 404 and 405 as improper character evidence.   Defendant argues that Dr. Huang's prior uncharged collaborations with other scientists are admissible under Fed.R.Evid. 404(b).   Defendant claims that this evidence is critical to show that the charged conduct in Counts 1 through 5 involving his use of the Transmission Electron Microscope ("TEM"), is no different with regard to the type of scientific research from his reviewed and approved Sandia scientific publications with other

scientists around the world, including other Chinese scientists.[1] In particular, Defendant contends that this evidence rebuts the Government's charge that he acted "without authority" in those counts.[2]

## DISCUSSION

### I. Whether Evidence is Admissible and Proper Under Rule 404(b)

The Government argues that Huang's prior uncharged work is not relevant to charged conduct, because "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Dobbs*, 506 F.2d 445, 447 (5th Cir. 1975) (finding that the district court's exclusion of evidence of noncriminal conduct in the preparation of some tax returns was appropriate); *see also Derango v. United States*, 18 F.2d 778, 778 (6th Cir. 1927) (excluding testimony that the accused had refused to commit similar crimes to the crimes charged on other occasions. Evidence of noncriminal activities "would only be relevant if the indictment charged the defendants with ceaseless criminal conduct." *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990).

Rule 404(b) is typically used by prosecutors seeking to rely on a criminal defendant's prior bad acts as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in the crime charged. However, evidence of a witness' other wrongs, acts, or crimes is admissible "for defensive purposes if it tends, alone or with other

---

[1] The admissibility of evidence regarding Defendant's prior work is a key issue which also comes up in Defendant's request for classification review, which has been pending for some time, and which the Court will address separately.

[2] The seven-count Superseding Indictment (Doc. 132, Redacted) charges Defendant with five counts of Federal Program Fraud, 18 U.S.C. § 666(a)(1)(A) (Counts 1-5), alleging that he was an agent of Sandia National Laboratories (SNL), that SNL in excess of $10,000 annually from the Department of Energy, and that Dr. Huang "embezzled, stole, obtained by fraud, intentionally misapplied and without authority knowingly converted to the use of persons not the rightful owner . . . [Sandia] property worth at least $5,000." The instant motion does not concern Count 6 which charges Defendant with Making a False Statement, violating 18 U.S.C. § 1001(a)(2), and Count 7 which alleges a theft of Sandia property, referring to the laptop computer that Defendant took to China and brought back with him on his return trip.

evidence, to negate the defendant's guilt of the crime charged against him." *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir.2004) (citing *Agushi v. Duerr*, 196 F.3d 754, 760 (7th Cir.1999)) (alternations and quotations omitted); *see also United States v. Montelongo*, 420 F.3d 1169, 1174-75 (10th Cir. 2005) (evidence that defendants sought to elicit on cross-examination regarding another individual's was relevant).[3]   This type of evidence is often referred to as "reverse 404(b)" evidence; *U.S. v. Duran-Moreno,* 616 F.Supp.2d 1162 (D.N.M. 2009) ("reverse" other crimes evidence, that prior owner of vehicle defendant was driving at the time he was arrested for drug charges, was admissible, in that the evidence made it at least somewhat more probable that the prior owner had placed the drugs in the vehicle, and the jury was not likely to be confused by the evidence).   Here, Defendant argues that since he was acting "with authority" when he engaged in collaborations that were similar to the charged conduct, he could not be acting "without authority" with regard to the charged conduct.

There is an initial matter that is worth mentioning, if only to put an end to it. Throughout this case, Defendant has complained about not getting clarification from the Government with regard to what constitutes use of the TEM "without authority."   *See, e.g.,* Doc. 274 at 2.   Defendant has attributed much prejudice to this lack of clarification, necessitating the filing of motions for a Bill of Particulars, and claiming an inability to refine discovery requests. However, (and not surprisingly), the Government has advised that "without authority" is used in the Superseding Indictment in its common usage, under its traditional definition.   According to the Merriam-Webster dictionary, "authority" is the "freedom granted by one in authority." Thus, "without authority" would be commonly understood to mean "without permission," "unauthorized" or "unofficial."   This definition fits well in the context of Second Superseding

---

[3]   The Rule 404(b) evidence used by defendant in *Montelongo* did not pertain to him, but to another individual, attempting to taint that individual in order to exculpate defendant.

Indictment which alleges that Defendant was an "agent" of Sandia Corporation  Doc. 215.  As the Government aptly noted at the hearing, if Defendant can show that Sandia management gave Defendant permission to engage in the collaborations and conduct for which he is now charged, then the Government loses.  *See* Doc. 295 (Hrg. Tr.) at 45:7-8 ("If the defendant's able to show that his management actually authorized him to do this work, we lose.").

Therein lies the problem for Defendant, who, if his defense is to mean anything, must show that he was in fact acting with approval or authority to use Sandia equipment and engage in the collaborations for which he is charged.   The fact that he engaged in prior work which was similar with Sandia's knowledge and approval really has no relevance in showing whether Dr. Huang *did* have approval or authority for the charged conduct.   The Government offers a comparison situation in the prosecution of a bank employee, who for years transported bags of money to authorized recipients, until one day he decided to transport bags of money to recipients without authorization.   The fact that the bank employee had previously followed the bank's rules in getting approval has nothing to do with the employee's intent at the time he decided to change course and give the money to unauthorized recipients.

Defendant claims that the Government's bank analogy is inapplicable, and offers another case in its stead, *U.S. v. Graham,* 269 Fed.Appx. 281 (4th Cir. W.Va. 2008).   In *Graham,* the defendant was allowed to cash out his sick leave under two circumstances only—illness or termination.   However, he sought formal approval from his employer to cash out his sick leave under different circumstances each of several times, and received permission to do so.   He then subsequently cashed out his sick leave without board approval four times, and was ultimately convicted of theft for doing so.    The Fourth Circuit reversed his conviction for stealing funds from the company, finding that the cash-outs done without formal approval were not "contrary to

the authority given to him by the Board."      Defendant relies on *Graham* to show that the permission which the *Graham* defendant obtained from his employer is analogous to the prior to the approval Dr. Huang obtained in performing prior uncharged work; and that the *Graham* defendant's subsequent cash-outs identify with the charged conduct in the Second Superseding Indictment.   However, upon some reflection, it is clear that the *Graham* case is inapposite, and the Court agrees with the Government here on these points.   In *Graham,* the defendant sought and was given permission to do that which he was not otherwise allowed to do under his contract.   The employer did not limit the amount of sick leave to be cashed out, and gave the defendant permission for the cash-outs every time he asked.

Unlike the instances of formal approval given by the employer in *Graham,* Dr. Huang's prior conduct cannot be viewed as evidence of open-ended or implicit permission given by Sandia to allow him to continue to use Sandia resources to do experiments which Defendant would keep to himself, and for which he would not seek Sandia's approval.   Defendant attempts to set forth the untenable legal theory that because his prior work on lithium nanowires had been authorized, he was therefore entitled to do any other work on lithium nanowires that anyone in the world suggested he do, simply because he felt that the work was similar to work he had done before with Sandia's approval.[4]   *Graham* simply does not support Defendant's position that his prior work approved by Sandia rebuts the Government's charge that he used Sandia equipment and engaged in work collaborations "without authority" simply because the work projects may have been similar, or even identical.

---

[4]   At the hearing, defense counsel suggested that Dr. Huang had never received any "formal go-ahead" to embark on any of his prior uncharged work.  Doc. 295 (Hrg. Tr.) at 54.    The Court assumes the operative word here is "formal," since it is unlikely that counsel is advancing the notion that Sandia scientists could embark on any project at all at any time, without any approval or permission by Sandia management.   However, the specific type of approval required—formal or not—does not alter or attenuate the "without authority" element in the charges.

Accordingly, I find that Defendant's prior uncharged work has no relevance to whether Defendant engaged in the charged conduct "without authority" and does not meet the threshold for relevance under Rule 402.  None of this evidence tends to negate Dr. Huang's guilt on the crimes which are alleged in the Superseding Indictment because it does not shed any light on the charge that he acted "without authority."   Evidence of Dr. Huang's prior work does not negate whether the charged work was in fact approved or authorized by Sandia.    Thus, evidence relating to prior uncharged work and work done for Sandia with Sandia's knowledge and approval is not appropriate as "reverse" Rule 404(b) evidence.

## II.    Probative Value of Prior Uncharged Work

The Court's inquiry may end with its conclusion that Defendant's prior uncharged work is not relevant or admissible as "reverse" Rule 404(b) evidence.   However, the Court would not allow this evidence at trial even if it were found to be admissible under Rule 404(b) because it fails the balancing test under Rule 403.

At the hearing, defense counsel embarked on a virtual litany of Dr. Huang's prior work which Sandia had approved or published.  This was just a miniscule sampling of the massive amounts of documents relating to Dr. Huang's prior work projects.   Parading thousands of pages of Defendant's prior work product that was performed *with* Sandia's approval would be incredibly misleading and confusing to the jury, which has the duty to determine whether the charged conduct was carried out "*without* authority."   Such evidence also carries the real risk, especially in light of the sheer number of documents, that factual conclusions relating to prior work which do not form part of the charges could even improperly excuse Defendant's conduct without a proper assessment by the jury of the work that *is* part of the charged conduct.

Defendant is entitled to present evidence which negates his guilt, not evidence that would surely misdirect or mislead the jury.

### III.    Due Process

Although omitted from the briefing, at the hearing, Defendant contended that due process entitles him to present evidence of prior uncharged work as a way to contest "each and every element" of the charges. Doc. 295 at 34:14-15. Precluding the admission of this evidence does not, in any way, violate Defendant's due process rights. Defendant has the right to cross-examine the Government's witnesses in order to disprove the elements of the offense pertaining to whether there was authorization to perform the work that is charged in the Indictment; and he will be allowed to do that. Defendant also has the right to present evidence that shows that the work actually *was* authorized; and if he has this evidence and the evidence meets the proper evidentiary standard, he will have the opportunity to present this evidence as well. However, due process does not require that Defendant be allowed to present evidence that not only fails to meet admissibility standards under Rule 404(b)—whether or not it is "reverse" Rule 404(b)—but also constitutes evidence that would mislead and/or confuse the jury and thus fails to meet the evidentiary standard under Rule 403.

**THEREFORE,**

**IT IS ORDERED** that the Government's First Motion in Limine to Bar Admission of Defendant's Prior Lawful Conduct **(Doc. 235)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE